## GEORGE WALKER *versus* THEODORE LINCOLN & al.

The statute of 1850, which authorized the Land Agent to sell the timber and grass growing on lots *reserved for public uses*, in unincorporated townships, should be construed to include, in its provisions, a lot which was reserved "*for the benefit of public education in general.*"

By a deed, which, from its terms, conveys only *the right, title and interest* of the grantor, the grantee does not obtain any thing which the grantor had previously parted with, although the subsequent deed was first recorded.

ON FACTS AGREED.

TRESPASS, committed on a lot in township No. 14, in East Division, Washington County.

It was agreed that said township was one of the lottery townships, named in Act of Nov. 9, 1786, of the General Court of Massachusetts, establishing a Land Lottery ; that the *locus in quo* was the lot named in the last clause of the first section of said Act, viz. : — " one lot, for the benefit of public education in general, as the General Court shall hereafter direct," and was assigned to the State of Maine, by commissioners appointed under the sixth section of the Act of separation of Maine from Massachusetts.

That said lot, and three other lots of three hundred and twenty acres each, were, by the said Act to establish a Land Lottery, reserved out of said township, for public uses, as set forth in the *proviso* of section one of said Act.

The plaintiff claims title, under deed of July 10, 1856, from the Land Agent of the State, acting under the Resolve of the Legislature, approved Feb. 26, 1856, entitled, " Resolve authorizing the Land Agent to sell the lot reserved for the future disposition of the Legislature, in plantation No. 14, east division, in the county of Washington," which deed conveys " all the right, title and interest which the State has" in said lot.

It is admitted that plantation No. 14 has not been incorporated, nor organized for plantation purposes.

The defendants admit the acts complained of, and justify them under a deed, or permit, dated May 21, 1855, which was

given in pursuance of the Act of the Legislature, approved Aug. 28, 1850.

The statements of plaintiff, and of one of the defendants, to be evidence, so far as the statements would be legally admissible, under objection, if embraced in depositions.

*G. Walker, pro se.*

*G. F. Talbot,* for defendants.

The opinion of the Court was drawn up by

TENNEY, C. J., — The lot, on which the trespass is alleged to have been committed, is the one which was reserved " for the benefit of public education in general," in township No. 14, of the lottery townships, in the east division of the county of Washington, in the Act of Nov. 9, 1786, of the General Court of Massachusetts. The plaintiff claims an unqualified title to the lot, by virtue of a resolve of this State, passed Feb. 26, 1856, which authorized the Land Agent to sell all the right, title and interest the State had therein, and a deed of the Land Agent, conformable to the resolve, to the plaintiff, dated July 10, 1856.

The defendants admit the acts alleged in the plaintiff's writ, but contend that they were authorized, under a deed from the Land Agent of May 21, 1855, which was made in pursuance of the statute of Aug. 28, 1850, c. 196, sections one and two, to Nehemiah Preston, one of the defendants, aided by an Act amendatory of the same, passed April 24, 1852, c. 284. It is admitted that the defendants had all the rights which Nehemiah Preston acquired by the deed to him.

The principal question for our consideration is, whether the deed to Preston is applicable to the lot in controversy, as well as to the other lots reserved in the township. In the Act of 1786, referred to, it is provided " that there be reserved, out of said township, four lots of three hundred and twenty acres each, for public uses, to wit: one for the use of a public grammar school; one for the use of the ministry; one for the first settled minister, and one for the benefit of public

education in general, as the General Court shall hereafter direct."

By the Act of 1850, " in all townships and tracts of land, unincorporated or not organized for election purposes, sold or granted by the State, or Commonwealth of Massachusetts, or by both jointly, in which lands have been reserved for public uses, the Land Agent of the State shall have the care and custody of such lands, until such tract or township is incorporated as aforesaid." Section 1. "The Land Agent is authorized and directed to sell, for cash, the right to cut and carry away the timber and grass, from off the reserved lands, referred to in the foregoing section, which have been located," &c., " the right to continue until the tract or township shall be incorporated or organized for plantation purposes." Sect. 2.

In section one of the amendatory Act, referred to, the lands reserved for public uses, in tracts or townships organized for election purposes, are transferred to the care and custody of the Land Agent; and sections seven and eight of the Act of Aug. 28, 1850, are repealed. And section two provides that, "the Land Agent shall, in the management and disposition of said reserved lands, be governed by the provisions of the Act, of which this is amendatory, and the proceeds of all sales of the timber or grass, when paid into the treasury of the State, shall be credited to each tract or township, respectively, according to the provisions of the sixth section of said Act." By the section referred to, in the Act of 1850, the net proceeds of such sales " shall be paid over to the authorities provided by law to receive the same, when they shall hereafter exist."

It is insisted by the plaintiff, that the statutes of 1850 and of 1852, invoked in defence, did not authorize the Land Agent to sell the timber and grass upon the lot reserved " for the benefit of public education in general;" that the authority of the Land Agent was predicated upon the fact, that the fee in the *reserved lands named in the Act* was not in the State, but had passed from it; that the funds arising from the sale of timber and grass did not belong to the State, but the net avails were to remain in the State treasury, *to await the exist-*

*ence of the being for which they were intended;* and that the State, in its fiduciary character, was to preserve the gift until the beneficiary should come into existence.

The proviso in the Act of 1786 clearly points out the beneficiaries, who are to have the benefit of the three lots reserved for public uses, first named. The General Court of Massachusetts, at the time of the Act, afterwards the Legislature of this State, were to direct for what purpose of general education the fourth lot should be applied. "The authorities provided by law, to receive" the net avails of the sales of reserved lots, it cannot be doubted, will embrace the beneficiary, which shall be entitled, by a law of the State, to the fund arising from the sale of the lot last named.

It is not easy to perceive, if the State should provide for the sale of the timber and grass upon the public lots, the fee of which had passed from the State, (which still had charge of the lots,) to prevent the timber and grass from destruction and pillage, that they might not, with equal propriety, include in the same provisions another lot alike exposed to injury, wherein the fee still remained in the State, but reserved for public use.

The statutes, touching the sale of lots reserved for public uses, before cited, were not only permissive, in their terms to the Land Agent, but were mandatory upon him; he being required to sell the lots referred to. If the lots reserved "for the benefit of public education in general" were not intended to be comprehended in the provision, they would be left exposed to be deprived of the timber thereon, by accident or unlawful depredations, without any positive neglect of duty in the Land Agent, when the other lots were protected in this particular. Such an oversight in the Legislature cannot be presumed; it must be clearly exhibited in its acts before it can be held to exist.

It is not denied that the State had the power to authorize and require the Land Agent to sell the timber and grass upon all the lots *reserved for public uses,* including the one in question, if they had seen fit to exercise it. And, upon the actual

Walker *v.* Lincoln.

exercise of this power, even to the conveyance of a fee in the lot, including the timber standing thereon, if it had not been previously sold, the claim of the plaintiff has its foundation.

The plaintiff has shown great ingenuity, in the attempt to make plausible his claim; but the plain language of the statutes cannot be overlooked.

In the Act of 1786, *four lots are reserved for public uses,* out of the townships granted. No distinction is made, in any respect, between the three in which the fee in the State was divested, and the fourth, which it could, by its Legislature, appropriate afterwards for the benefit of public education in general. In the Act of 1850, as we have seen, the Land Agent was required to sell the right to cut and carry away the timber and grass from off the *reserved lands referred to in the foregoing section;* and, in the section so referred to, the care and custody is given to the Land Agent, of the lands which have been *reserved for public uses.* And, in the amendatory Act of 1852, the lands mentioned are those *reserved for public uses.* It is quite manifest, that the Legislature of this State intended that the Land Agent's obligation to sell timber and grass should extend to that upon all the lots *reserved for public uses.*

The deed to the plaintiff, though given subsequent to the one to Preston, was first recorded. But, from its terms, it conveyed only the *right, title and interest* of the State, in the lot described. And he obtained nothing which the State had previously parted with. *Coe* v. *persons unknown,* 43 Maine, 432. If the deed to him had been of the lot, in general terms, without any qualifying words, the question would be different from the one now presented. And, upon such a question, we intimate no opinion.

The statements of the plaintiff, and of the defendant Preston, expressive of the opinion of one and the other, as to the extent of the authority given to the latter, under the statutes and the deed to him, are not competent evidence and have no influence upon the law to be applied to the case.

*Plaintiff nonsuit.*

RICE, APPLETON, HATHAWAY, CUTTING and GOODENOW, J. J., concurred.